Alexander W. Kramer, J.
The plaintiff, at the time of the accrual of the cause of action herein, was a duly licensed real estate salesman in the employ of the defendant, a duly licensed real estate broker. Plaintiff was to handle the sale of vacant, unimproved parcels of land: that appeared to be his specialized *48 function. The defendant agreed to share all commissions flowing from such sales with the plaintiff on a “ fifty-fifty ” basis.
During the course of his employment the plaintiff handled many such transactions. The defendant concedes that there is currently due the plaintiff $2,085 — with interest from May 31, 1963.
Two items are at issue. One involved the sale of a parcel of realty wherein the agreed earned commission was $3,200 (the Ripley transaction). At the closing of title, the plaintiff not being present, the defendant took it upon himself to accept $3,000 in full satisfaction of the $3,200. The plaintiff claims he is entitled to one half of the difference —or $100, inasmuch as the defendant at no time consulted with him about the abatement-in commission prior to the acceptance of the lesser for the greater amount; at no time received his consent to such abatement prior to said acceptance.
The other item involves a gross commission of $12,096 which was admittedly earned as the result of plaintiff’s efforts. Said commission was owed the defendant by Foxton, Inc. Foxton paid defendant $2,600 on account thereof. Thereafter negotiations ensued between the defendant and Foxton. Foxton offered to settle the balance of $9,496 for $6,000. Defendant communicated this proposal to the plaintiff. It is conceded that plaintiff disapproved. Indeed, he testified that he, in effect, said to the defendant, ‘‘ if you want to compromise the balance, do whatever you want with the half due you, but I want my full half.” Despite this the defendant accepted $6,000 in full satisfaction of the $9,496. Plaintiff therefore contends that he is entitled to one half of $3,496 or $1,848.
There is no doubt but that the plaintiff has a right to look to the defendant for the recovery allegedly due. Indeed, he has no right to look to anyone else. As a real estate salesman he was not entitled to any commission from any of defendant’s clients. (Real Property Law, § 442-a.)
The issue to be decided, tersely stated, is: does a real estate broker have the right to abate earned commissions in which his salesman is entitled to share without the consent of the salesman?
There is a surprising paucity of case law available.
It has been observed that “In order that one broker may recover a share of the commission of another broker it is necessary and sufficient that there be a valid, existing and applicable agreement between them for a division of the commission, that plaintiff shall have performed his part of the agreement, and that defendant shall have actually received the commission.” (12 C. J. S., Brokers, § 81, pp. 176-177.)
*49 It might be argued that since defendant did not receive the amounts in dispute, he is not obligated to pay. However, the elements of good faith and fair dealing come into play. “ After such an agreement has been entered into, the parties must deal fairly and in good faith with each other.” (Id., p. 177.)
When the plaintiff consummated the two sales in question, as between himself and the defendant, he acquired a vested interest in the earned commissions. Indeed the right of a broker, under similar circumstances, to sue the principal has been recognized in another jurisdiction.
‘ ‘ Where a contract between a broker employed to sell land and another broker, engaged to assist him, for a division of the commission, is, in effect an equitable assignment by the former of a part interest in his contract with the landowner, and the assignor refuses to assert his claim for the benefit of the assignee, the assignee may, in his own name, sue the landowner for his part of the commission.” (Id., § 105, p. 240.)
However, section 442-a of our Real Property Law would preclude such a suit upon the part of the plaintiff herein.
The plaintiff — although not strictly a third-party beneficiary — is, in the opinion of this court, akin to one. As between him and the defendant, the plaintiff had definite, clear and discernible rights with respect to the transactions he handled. It is not clear that knowledge of these rights was conveyed to defendant’s clients. Had such knowledge been imparted, it is quite possible that an interdiction against the invasion of plaintiff’s rights might have come into play.
“ After a third person accepts, adopts, or acts upon the contract entered into for his benefit, the parties thereto cannot rescind the same without his consent, so as to deprive him of its benefits.” (10 N. Y. Jur., Contracts, § 250, p. 179.)
Defendant argues that plaintiff was his employee; that as plaintiff’s superior, he had the right, power and authority to determine charges to be made to his clients. This might be true to the point Avhere defendant may have elected to charge a given client a lower commission than customarily charged ab initio, during the course of the transaction and the negotiations leading to the culmination thereof. But, once having-arrived upon a compensatory figure — to be shared in by the plaintiff, the plaintiff acquired an interest therein. This interest could not be altered, modified or abrogated Avithout his consent. It is true that in the Foxton case the defendant agreed to accept $6,000 in satisfaction of $9,496. On the theory that a half of a loaf is better than none, defendant seeks to justify his unilateral action. But Avhere is the line to be drawn? Would $1,000, *50 or $100, or nothing (to reduce the proposition to an absurdity) in satisfaction of $9,496 have been justifiable? We think not.
In view of the foregoing, this court finds that the defendant acted at his peril when — in one instance without consulting the plaintiff, and in the other over plaintiff’s express objections — he abated commissions in which plaintiff had a right to share.
Judgment is directed for the plaintiff for:
1. Amount concededly due.................. $2,085
2. Differential re the Ripley transaction...... 100
3. Differential re the Foxton transaction..... 1,848
$4,033
together with interest from May 31, 1963, and the costs and disbursements of this action.